IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

DAKOTA NELSON;
BELINDA BIAFORE, individually and
as Chairperson of the West Virginia
Democratic Party; ELAINE A. HARRIS,
individually and as Chairperson of the Kanawha County
Democratic Executive Committee; WEST VIRGINIA
DEMOCRATIC PARTY; and WEST VIRGINIA
DEMOCRATIC HOUSE LEGISLATIVE
COMMITTEE,

     Plaintiffs,

v.     Civil Action No. 3:19-cv-00898

MAC WARNER in his official capacity
as WEST VIRGINIA SECRETARY OF
STATE and VERA MCCORMICK, in her official
capacity as CLERK OF KANAWHA COUNTY,
WEST VIRGINIA,

     Defendants.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs, DAKOTA NELSON; BELINDA BIAFORE, individually and as Chairperson of the West Virginia Democratic Party; ELAINE A. HARRIS, individually and as Chairperson of the Kanawha County Democratic Executive Committee WEST VIRGINIA DEMOCRATIC PARTY; and WEST VIRGINIA DEMOCRATIC HOUSE LEGISLATIVE COMMITTEE, file this Amended Complaint for Declaratory and Injunctive Relief against Defendants, MAC WARNER, in his official capacity as the West Virginia Secretary of State, and Vera McCormick, in her official capacity as Clerk of Kanawha County, West Virginia.  For their Amended Complaint, Plaintiffs allege:

**NATURE OF THE CASE**

1.     This case concerns the constitutionality of a West Virginia law that puts an arbitrary thumb on the scale in the State's partisan general elections for candidates of a single political party by

mandating that the party whose candidate for president received the highest number of votes in the last preceding presidential election be listed first on the ballot for all partisan offices statewide. W. Va. Code § 3-6-2(c)(3) ("Ballot Order Statute").

2. The Ballot Order Statute thus requires that, in every partisan contest for political office in West Virginia on its general election ballots through at least 2020, the Republican candidate will be listed first for no other reason than a majority of West Virginia voters in 2016 selected Donald Trump who is affiliated with the Republican Party.[1] Democratic candidates will have no opportunity to be listed first—for no other reason than the fact that their political party affiliation is not shared by Donald Trump.

3. This is no mere election administration detail. It is a fact almost universally acknowledged that the candidates listed first in a race on the ballot receive an electoral benefit solely due to their ballot position. Academics have concluded this again and again, as have federal and state courts. It is the inevitable result of a phenomenon known as the "primacy effect." And it gives first-listed candidates a meaningful and arbitrary advantage over all of their opponents.[2]

4. Thus, the Ballot Order Statute gives Republican candidates a meaningful electoral advantage over their similarly situated Democratic opponents. That advantage all follows arbitrarily from the electoral success of a single candidate in an earlier, unrelated election. And it persists on every ballot, in every partisan race, in every general election thereafter.

5. This litigation is brought by a group of Plaintiffs, who have supported and intend to continue to support Democratic candidates in West Virginia, and all of whom have suffered and, absent

---

[1] Although not defined by statute, "highest number of votes" has been interpreted as the presidential candidate receiving the highest number of votes in West Virginia, as opposed to nationwide.

[2] Other terms for this phenomenon include "position bias," and, in the context of elections, the "ballot order effect" and "candidate name order effect."

an order from this Court, are guaranteed to continue to suffer injury because of the Ballot Order Statute.

6. The Ballot Order Statute injures Plaintiffs, their constituencies, and the candidates they support, by treating them differently from the similarly situated Republican Party and its candidates and voters, solely because a Republican won the last presidential election. The Statute also dilutes the vote of West Virginians simply because of their support of Democratic candidates in West Virginia elections. The resulting disparate treatment and burden on Plaintiffs' rights are not justified by any legitimate, much less compelling, state interest.

7. In the only case in which the Supreme Court has considered a challenge to a state practice that would have given certain types of candidates (there, incumbents) the advantage of being placed first on the ballot, the Court summarily affirmed the lower court's preliminary injunction, which required that the State use a ballot order system that gave candidates an equal opportunity to be listed first. *See Mann v. Powell*, 333 F. Supp. 1261 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).

8. Multiple courts that have considered analogous challenges have similarly found they cannot survive constitutional scrutiny. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977); *Graves v. McElderry*, 946 F. Supp. 1569, 1580 (W.D. Okla. 1996); *Netsch v. Lewis*, 344 F. Supp. 1280, 1280 (N.D. Ill. 1972); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (Cal. 1975); *Holtzman v. Power*, 62 Misc. 2d 1020, 1025 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (N.Y. 1970).

9. Most recently, the United States District Court for the Northern District of Florida struck down as unconstitutional a similar Florida Statute that gave the party which won the last gubernatorial election the right to have all its candidates listed first in every partisan election.

*Jacobson v. Lee*, No. 4:18CV262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15, 2019) (attached as Exhibit A).

10. This Court should reach the same conclusion and hold West Virginia's Ballot Order Statute unconstitutional.

## JURISDICTION AND VENUE

11. Plaintiffs sue under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

12. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

13. This Court has personal jurisdiction over the Defendants, who are sued in their official capacity only.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to Plaintiffs' claim occurred there.

15. This Court has the authority to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

16. Plaintiff DAKOTA NELSON is a resident of Huntington, Cabell County, West Virginia. Nelson is and has been a resident of West Virginia for over twenty-nine years. Nelson is a member of the Democratic Party. In 2018, Nelson was one of the three Democratic nominees for the West Virginia House of Delegates in District 16. Because Nelson ran as the nominee of the Democratic Party, Nelson and the other two Democratic Party nominees were listed after the three Republican candidates. *See* 2018 Cabell County General Election Ballot (attached as Exhibit B). Nelson has filed as a precandidate for West Virginia House of Delegates in District 16 for the 2020 election. Nelson also regularly supports Democratic candidates in West Virginia elections and intends to vote for Democratic Party candidates (including himself) in the upcoming November 2020 general election. If the Court does not enjoin the Ballot Order Statute before then, Republican Party candidates will be listed first on the ballot in all partisan races in which he will be voting, and they will continue to receive an artificial and unfair advantage purely because of their ballot position. As a result, Nelson will suffer serious, irreparable injury because of the Ballot Order Statute, due to the dilution of his vote, the dilution of those who vote for him, and the burden on his efforts to help elect himself and other Democratic Party candidates. Nelson's vote for Democratic Party candidates and the votes of those who vote for him will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot.

17. Plaintiff BELINDA BIAFORE is a resident of Fairmont, Marion County, West Virginia. Biafore is and has been a member of the Democratic Party in West Virginia for over forty-four years. Biafore has been an active supporter of the party for over fifty years. She serves as

Chairperson of the West Virginia Democratic Party having previously served as party vice chairperson, member of the executive committee, and in several leadership roles West Virginia Federation of Democratic Women. Biafore regularly supports Democratic candidates in West Virginia elections and intends to vote for Democratic Party candidates in the upcoming November 2020 general election. If the Court does not enjoin the Ballot Order Statute before then, Republican Party candidates will be listed first on the ballot in all partisan races in which she will be voting, and they will continue to receive an artificial and unfair advantage purely because of their ballot position. As a result, Biafore will suffer serious, irreparable injury because of the Ballot Order Statute, both due to the dilution of her vote and the burden on her efforts to help other Democratic Party candidates. Biafore's vote for Democratic Party candidates will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot. Biafore brings this case in her individual capacity and in her capacity as Chairperson of the West Virginia Democratic Party.

18. Plaintiff ELAINE A. HARRIS is a resident of Kanawha County, West Virginia. Harris is and has been a member of the Democratic Party in West Virginia for many years. Harris is and has been an active supporter of the party for decades. She currently serves as Chairperson of the Kanawha County Democratic Executive Committee. Harris regularly supports Democratic candidates in West Virginia elections and intends to vote for Democratic Party candidates in the upcoming November 2020 general election. If the Court does not enjoin the Ballot Order Statute before then, Republican Party candidates will be listed first on the ballot in all partisan races in which she will be voting, and they will continue to receive an artificial and unfair advantage purely because of their ballot position. As a result, Harris will suffer serious, irreparable injury because of the Ballot Order

Statute, both due to the dilution of her vote and the burden on her efforts to help elect other Democratic Party candidates. Harris's vote for Democratic Party candidates will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot. Harris brings this case in her individual capacity and in her capacity as Chairperson of the Kanawha County Democratic Executive Committee.

19. Plaintiff WEST VIRGINIA DEMOCRATIC PARTY ("WVDP") is a state political party, as defined by West Virginia Code §§ 3-1-8, 3-8-1a(31), and the West Virginia chapter of the United States Democratic Party. The WVDP represents a diverse group of stakeholders, including elected officials, candidates for elected office, state committee members, advisory caucuses, affiliate groups, grassroots activities, and active voters. Its mission is to elect Democratic candidates across West Virginia. The WVDP works to accomplish its mission by making expenditures and working to increase turnout to elect Democratic candidates at both the State and federal level, including through voter encouragement ("GOTV") and voter persuasion efforts. It also works to accomplish its mission by assisting West Virginians to ensure that all eligible voters have access to the franchise. The WVDP has previously engaged in, and plans to continue to engage in, expenditures on behalf of Democratic Party candidates and GOTV assistance. The Ballot Order Statute directly harms the WVDP by frustrating its mission and efforts to elect Democratic Party candidates in West Virginia by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. The WVDP has had to and will have to expend and divert funds that otherwise would have supported GOTV and other mission-critical efforts to combat the effects of the Ballot Order Statute to assist in getting Democratic candidates elected in West Virginia, including specifically in anticipation of the 2020 general election.

7

The Ballot Order Statute further harms the WVDP because it treats the candidates the WVDP supports in West Virginia differently than similarly situated Republican Party candidates in partisan elections by mandating that all Republican candidates be listed first on the ballot for no other reason than a Republican won the last presidential election in West Virginia. The WVDP's voter members and its constituency of Democratic voters also have suffered and will continue to suffer serious, irreparable injury because of the Ballot Order Statute, because it has been and will continue to dilute their votes for Democratic Party candidates.

20. Plaintiff WEST VIRGINIA DEMOCRATIC HOUSE LEGISLATIVE COMMITTEE ("WVHDLC") is the West Virginia House of Delegates Democratic political party caucus campaign committee as defined by West Virginia Code § 3-8-1a(6). The WVHDLC's mission is electing Democratic candidates to the West Virginia House of Delegates from across West Virginia. The WVHDLC works to accomplish its mission by expending for, and contributions to, Democratic candidates for the West Virginia House of Delegates. For 2020, the WVHDLC has identified several delegate districts in West Virginia as targeted races, in which it will expend significant resources to support Democratic candidates. In 2020, the WVHDLC expects to make contributions and expenditures to persuade and mobilize voters to support Democratic candidates in delegate elections around the state. The Ballot Order Statute directly harms the WVHDLC by frustrating its mission and efforts to elect Democratic Party candidates in West Virginia by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. Most immediately, the WVHDLC must expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in West Virginia, to combat the effects of the Ballot Order Statute in the 2020 general election.

21. The WVDP and the WVHDLC are collectively hereinafter referred to as the Organizational Plaintiffs.

22. Defendant MAC WARNER is the Secretary of State of West Virginia and the State's chief elections official. W. Va. Code § 3-1A-6(a). Warner is named as a Defendant in his official capacity in each role. In his official capacities, he is responsible for the administration and implementation of election laws in West Virginia, including the Ballot Order Statute. W. Va. Code § 3-1A-6(a) ("[a]ll election officials . . . clerks of county commissions . . . [and] boards of ballot commissioners . . . shall abide by any orders that may be issued and any legislative rules that may be promulgated by the Secretary of State"). Warner has the power under West Virginia law to, by order or rule, direct the clerks of county commissions and boards of ballot commissioners to refuse to follow the Ballot Order Statute if this Court finds it unconstitutional. The Secretary, personally and through the conduct of his employees, officers, agents, and servants, acted under color of state law.

23. Defendant VERA MCCORMICK is the Clerk of Kanawha County and is named as a Defendant in her official capacity. Defendant McCormick is Kanawha County's chief elections officer. Smith also serves as the Chair of the Kanawha County Ballot Commission. W. Va. Code §3-1-19(c). The Ballot Commission is responsible for election administration within Kanawha County. Its duties include, but are not limited to, providing voter information and "instructions for voters in preparing their ballots and casting a provisional ballot as prescribed by the Secretary of State," and printing sample ballots for each voting location. W. Va. Code §3-1-20. It also "provides the ballots" for public officers and for any countywide special election ordered by the county commission. W. Va. Code §3-1-21. Ballot Commissioners perform their duties "at all general, special, and primary elections." W. Va. Code §3-1-19(g). The Kanawha County Clerk, personally and through the conduct of her employees, officers, agents, and servants, acted under color of state law as set forth in this

Amended Complaint.

24. Defendant McCormick is also named as proposed representative of a defendant class of West Virginia County Ballot Commissioners. The proposed class is so numerous that joinder is impracticable. The claims against the proposed class involve common issues of law and fact, and the defenses of the defendant class representative are typical of the defenses of the class. The proposed class representative will adequately represent the class. Class litigation in this case will avoid inconsistent or varying adjudications.

## BACKGROUND FACTS AND LAW

25. It is well-established that the candidate whose name is listed first on the ballot receives the advantage of additional votes solely due to her ballot position. *See, e.g.*, *Holtzman*, 62 Misc. 2d at 1023 (recognizing "there is a distinct advantage to the candidate whose name appears first on a ballot" and this phenomenon is "so widespread and so universally accepted as to make it almost a matter of public knowledge"); *McLain*, 637 F.2d at 1166 (affirming "finding of ballot advantage in the first position"); *Sangmeister*, 565 F.2d at 465 ("[T]he trial court's conclusion that 'top placement on the ballot would be an advantage to the plaintiff' is supported by substantial evidence[.]"); *Graves*, 946 F. Supp. at 1576 (finding "some measure of position bias exists in Oklahoma's" elections); *Akins v. Sec'y of State*, 154 N.H. 67, 71 (N.H. 2006) (affirming finding that "the primacy effect confers an advantage in elections"); *Gould*, 14 Cal. 3d at 664 (describing finding of position bias as "consistent with parallel findings rendered in similar litigation throughout the country"); *State ex rel. Roof v. Bd. of Comm'rs*, 39 Ohio St. 2d 130, 136 (Ohio 1974) (recognizing "it is generally agreed" that "candidates whose names appear at the beginning of the list receive votes attributable solely to the positioning of their names"); *Kautenburger v. Jackson*, 85 Ariz. 128, 130-131 (Ariz. 1958) ("[I]t is a commonly known

and accepted fact that where there are a number of candidates for the same office, the names appearing at the head of the list have a distinct advantage.").

26. Academic research confirms the advantage from being listed first. In *Jacobson v. Lee,* the Court heard evidence establishing that candidates of the major parties in Florida received an average primacy effect vote of approximately five percent when listed first in their office block on the ballot, and that this advantage accrues to a candidate because of the candidates' name order. Slip. op. at 45.

27. West Virginia's Ballot Order Statute mandates that, for every single partisan election listed on a general election ballot in the State, candidates from the party whose presidential nominee received the highest number of votes in the last preceding presidential election be listed first on the ballot; the party receiving the second highest vote listed next, and so on; and any party not having a presidential nominee in the previous presidential election placed after party-affiliated candidates in the order nomination certifications are filed. W. Va. Code § 3-6-2(c)(3).

28. Thus, the Ballot Order Statute treats similarly situated political parties differently, to the consistent detriment of the party and candidates who do not share a political party affiliation with the last-elected President, and the voters who support those disfavored candidates.

29. Candidates who share their political party affiliation with the presidential candidate receiving the highest number of votes enjoy a systemic, arbitrary, and artificial advantage over their otherwise similarly situated rivals, directly and solely because of the BallotOrder Statute, which boosts their electoral prospects for no other reason than a single member of their party out-performed other candidates in a different election, which, often, occurred years before the elections in which they continue to enjoy this state-mandated advantage.

30. Even if the advantage conferred by the Ballot Order Statute in the average race was not ordinarily more than a point or two, in electoral politics, the resources needed to overcome such a difference are often substantial.

31. The Ballot Order Statute undermines the integrity of the State's elections, particularly in close races.

32. Unless the Ballot Order Statute is enjoined, in each of the partisan races on the ballot in West Virginia in 2020, including those that are projected to be competitive, the Republican candidate will enter the election with a state- mandated thumb on the scale for his or her election, for no other reason than a different Republican candidate won the most votes in an unrelated presidential election four years earlier.

33. The result will be severe and irreparable harm to the Plaintiffs, and the candidates they support and, with the Organizational Plaintiffs, their memberships and voting constituencies.

34. Neither political favoritism of one political party (here, the political party receiving the most votes for president in the last presidential election) and its voters, nor purported election administration concerns, can sustain the Ballot Order Statute against legal challenge. *See Obama for Am. v. Husted*, 697 F.3d 423, 434 (6th Cir. 2012) (finding state interest in "smooth election administration" insufficient to justify disparate burden on voters); *see also Graves*, 946 F. Supp. at 1569 (finding no legitimate state interest in always placing one major political party first on the ballot).

35. Even if adopting a rotational ballot order system to ensure fairness in elections would impose some administrative burden, West Virginia cannot justify the disparate treatment that the Ballot Order Statute mandates nor does the administrative burden outweigh the burden it imposes on the rights of political parties, candidates, and the voters who support them. *See, e.g.*, *Democratic Exec. Comm. v. Lee*, 915 F.3d 1312, 1322 (11th Cir. 2019); *Obama for Am.*, 697 F.3d at 434; *Martin*

*v. Kemp*, 341 F. Supp. 3d 1326, 1341 (N.D. Ga. 2018); *see also Mann*, 333 F. Supp. at 1261; *Meier*, 637 F.2d at 1166; *Sangmeister*, 565 F.2d at 468; *Graves*, 946 F. Supp. at 1580; *Netsch*, 344 F. Supp. at 1280; *Gould*, 14 Cal. 3d at 664; *Holtzman*, 62 Misc. 2d at 1025.

## CLAIMS FOR RELIEF

### COUNT I
### First and Fourteenth Amendments
### U.S. Const. Amend. I and XIV,
### 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202
### (Undue Burden on the Right to Vote )

36. Plaintiffs reallege and incorporate by reference all prior paragraphs, as though set forth herein.

37. A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

38. "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted); *see also Gould*, 14 Cal. 3d at 670 (applying "close scrutiny" standard of review, because ballot order system "impose[d] a very 'real and appreciable impact' on the equality, fairness and integrity of the electoral system"); *Akins*, 154 N.H. at 67 (applying strict scrutiny to determining state constitutionality of ballot order system that prioritized candidate names alphabetically). West Virginia's Ballot Order Statute, which provides an unfair, arbitrary, and artificial advantage to all candidates whose political party won the most votes in the last presidential election, burdens the right to vote of those voters— including the Voter Plaintiffs and the members and constituents of the Organizational Plaintiffs—who

support candidates of the major political party whose candidates are not listed first on the ballot, because it dilutes their vote relative to the votes for the favored political party candidate that the Statute requires be listed first on the ballot. *See McLain*, 637 F.2d at 1163 (describing system of listing first candidates of party that received the most votes in last North Dakota congressional election as "burden[ing] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the *fourteenth amendment*"); *see also Gould*, 14 Cal. 3d at 670 (describing statute that prioritized ballot order by incumbency as "inevitably dilut[ing] the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class").

39. The weight and impact of Plaintiffs' votes (and the votes of the Organizational Plaintiffs' membership and constituencies) is consistently and arbitrarily decreased—and the weight and impact of the votes for the statutorily favored party's candidates, increased—by the votes accruing to the first-listed candidates solely due to their first position on the ballot as mandated by the Ballot Order Statute.

40. The Ballot Order Statute is not justified by any legitimate state interest, let alone a compelling state interest, that is sufficiently weighty to justify the burden on the right to vote. *See McLain*, 637 F.2d at 1167 (holding state's asserted interest in "making the ballot as convenient and intelligible as possible for the great majority of voters" was not a legitimate state interest to justify listing first on the ballot candidates of the political party that received the most votes in the last congressional election and constituted "favoritism"); *Gould*, 14 Cal. 3d at 675 (rejecting argument that asserted state interests in promoting "efficient, unconfused voting" justified an incumbent-first ballot order system and holding that interest "in promoting speed in the voting booth" was not a "compelling" state interest); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election" in terms of ballot order).

41. Thus, the burdens imposed by the Ballot Order Statute on the fundamental right to vote outweigh any alleged benefits of the law.

42. Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between Defendants and Plaintiffs, with adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries to their fundamental right to vote, including, most immediately, in the upcoming 2020 general election.

**COUNT II**
**Fourteenth Amendment**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**(Disparate Treatment in Violation of the Right to Equal Protection)**

43. Plaintiffs reallege and incorporate by reference all prior paragraphs, as though set forth herein.

44. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

45. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

46. West Virginia's Ballot Order Statute treats one recognized political party— and its candidates, members, constituencies, and the voters and organizations who support it—differently from the other similarly situated party, giving one an unfair and arbitrary electoral advantage based solely on the performance of that party's candidate in the last presidential election, in violation of the Equal Protection Clause. *See McLain*, 637 F.2d at 1166 (holding statute requiring political party of

15

candidate who received most votes in prior North Dakota congressional election to be listed first on ballots unconstitutional, in violation of Equal Protection Clause); *see also Mann*, 333 F. Supp. at 1267 (enjoining ballot order system of placing candidates at top of ballot based on prior electoral success—due to "seniority" or "incumbency"—and stating "[t]he Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally"), *aff'd*, 398 U.S. 955 (1970); *Netsch*, 344 F. Supp. at 1281 (holding statute prescribing ballot order by past electoral success violated Fourteenth Amendment because it denied "the right to equal protection"); *Holtzman*, 62 Misc. 2d at 1024 (holding system requiring placement of incumbent at top of ballot unconstitutional because it violated the Equal Protection Clause); *Sangmeister*, 565 F.2d at 468 ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted). West Virginia's Ballot Order Statute is not even rationally related to a legitimate state interest—much less narrowly tailored to advance a compelling state interest—to justify favoring the political party of the President (and the serious and irreparable injury that results to Plaintiffs because of that favoritism), by ensuring that all candidates running in future elections under the auspices of the same party are listed first on the ballot and thus receive an unfair electoral advantage solely resulting from their position of primacy. *See, e.g.*, *McLain*, 637 F.2d at 1167; *Holtzman*, 62 Misc. 2d at 1024.

47. Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between Defendants and Plaintiffs, with adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries due to disparate treatment in violation of the Equal Protection Clause, including, most immediately, in the upcoming 2020 general election.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment:

(a) declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Ballot Order Statute violates the First and Fourteenth Amendment to the United States Constitution;

(b) preliminarily and permanently enjoining the Defendants, the Defendant Class, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Ballot Order Statute under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

(c) awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action under 42 U.S.C. § 1988 and other applicable laws; and

(d) granting such other and further relief as the Court deems just and proper, including requiring Defendants and the Defendant Class to use a ballot order system that gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot.

Respectfully submitted this 6th day of January, 2020.

    /s/ Anthony J. Majestro
Anthony J. Majestro, Esq.
Powell & Majestro, PLLC (W.Va. Bar 5165)
405 Capitol Street, Suite P-1200
Charleston, West Virginia 25301
(304) 346-2889 (v) (304) 346-2895 (f)
amajestro@powellmajestro.com

*Counsel for the Plaintiffs*

17

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel of record via the Court's ECF system on January 6, 2020 and via facsimile as follows:

Steve Connolly
Donald Kersey
1900 Kanawha Boulevard, East
Charleston, West Virginia 25305
Attorneys for Mac Warner

Marc J. Slotnick
500 Virginia Street East
Suite 600 Charleston WV 25301
County Attorney, Kanawha County

                                            */s/ Anthony J. Majestro*
                                            **Anthony J. Majestro**