# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

DAKOTA NELSON;
BELINDA BIAFORE, individually and as
Chairperson of the West Virginia Democratic Party;
ELAINE A. HARRIS, individually and as
Chairperson of the Kanawha County Democratic Executive Committee;
WEST VIRGINIA DEMOCRATIC PARTY; and
WEST VIRGINIA HOUSE LEGISLATIVE COMMITTEE,

                    Plaintiffs,

v.                                       CIVIL ACTION NO. 3:19-0898

MAC WARNER in his official capacity as
West Virginia Secretary of State; and
VERA MCCORMICK, in her official capacity as
Clerk of Kanawha County West Virginia,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

This suit challenges the constitutionality of a West Virginia law mandating that the party whose candidate for president received the most votes in the last election be listed first on ballots for partisan offices. Defendant Vera McCormick, Clerk of Kanawha County, now moves to dismiss. For the reasons below, the Court **DENIES** her Motion.

## I. BACKGROUND

West Virginia's "Ballot Order Statute" mandates:

> The party whose candidate for president received the highest number of votes at the last preceding presidential election is to be placed in the left, or first column, row or page, as is appropriate to the voting system. The party which received the second highest vote is to be next and so on. Any groups or third parties which did not have a candidate for president on the ballot in the previous presidential election are to be

placed in the sequence in which the final certificates of nomination by petition were filed.

W. Va. Code § 3-6-2(c)(3). Election officials have interpreted "highest number of votes" to refer to votes in West Virginia, not nationwide. ECF No. 7 ¶ 2 n.1. Thus, ballots for the upcoming 2020 general election will list Republican Party candidates first because a majority of West Virginians voted for Donald Trump in 2016. The plaintiffs, all of whom are affiliated with the Democratic Party, allege a growing body of social science and case law confirms that candidates listed first on a ballot benefit from a bias known as the "primacy effect." ECF No. 7 ¶ 3. A district court in Florida recently found the primacy effect can be as much as five percent. *Id.* ¶ 26. The plaintiffs therefore argue the Ballot Order Statute is unconstitutional because it arbitrarily gives candidates from one party an advantage over candidates from other parties. *Id.* ¶¶ 1–2.

Count One alleges the Ballot Order Statute is an undue burden on the right to vote in violation of the First and Fourteenth Amendments. *Id.* ¶¶ 36–42. Count Two alleges the Statute constitutes disparate treatment in violation of the Fourteenth Amendment's Equal Protection Clause. *Id.* ¶¶ 43–47. The plaintiffs seek a declaratory judgment that the Ballot Order Statute is unconstitutional and injunctive relief prohibiting the defendants from enforcing the Statute. *Id.* at 17. Defendant Vera McCormick now moves to dismiss the claims against her. ECF No. 14.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.*

### III. DISCUSSION

**A. The plaintiffs sufficiently allege an injury in fact that is not too speculative.**

A party has standing to sue if the party suffered an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The alleged injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (citations omitted). McCormick argues the plaintiffs lack standing because they do not allege an actual injury. ECF No. 15, at 5–7. As support, McCormick relies on *Libertarian Party of Virginia v. Alcorn*, in which the Fourth Circuit affirmed the dismissal of a challenge to Virginia's ballot ordering law that assigned a lower position to minor parties and independent candidates. 826 F.3d 708 (4th Cir. 2016). The plaintiffs argue *Alcorn* is distinguishable and does not compel dismissal here. ECF No. 22, at 5–10.

In *Alcorn*, the Libertarian Party of Virginia challenged the state's three-tiered ballot system. 826 F.3d at 712. To be listed in the first tier, a candidate's party must have received at least ten percent of the total votes for any statewide office filled in either of the two preceding statewide general elections. *Id.* Only the Republican and Democratic parties met this requirement. *Id.* The second tier listed other recognized political parties, including the Libertarian Party, and the third tier included independent candidates. *Id.* The order of candidates in the first and second tiers was set by lot, and each political office on the ballot replicated that order. *Id.* Candidates in the third tier were listed alphabetically by surname. *Id.*

To determine the constitutionality of Virginia's ballot ordering system, the Fourth Circuit applied the framework established by the Supreme Court in *Anderson v. Celebrezze* and *Burdick v. Takushi*. 460 U.S. 780 (1983); 504 U.S. 428 (1992). Those decisions held that courts should review First and Fourteenth Amendment challenges to state election laws "by weighing the severity of the burden the challenged law imposes on a person's constitutional rights against the importance of the state's interests supporting that law." *Alcorn*, 826 F.3d at 713 (citations omitted). This balancing "requires 'hard judgments'—it does not dictate 'automatic' results." *Id*. at 716 (citation omitted). "Laws imposing only 'modest' burdens are usually justified by a state's 'important regulatory interests.'" *Id.* at 716–17 (citation omitted). Laws imposing "severe" burdens, however, "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* at 717 (citation omitted). In other words, "severe" burdens are subject to "strict scrutiny." *Id.* (citation omitted). The appellant in *Alcorn* conceded the burden did not warrant strict scrutiny, and the court upheld the law because it imposed little burden on the appellant's constitutional rights and Virginia articulated several important interests supporting the law. *Id.* at 718, 721.

While *Alcorn* provides helpful guidance in this case, it addressed a ballot statute significantly different than West Virginia's. The core issue in *Alcorn* was Virginia's privileging of major parties over minor ones. The court held this division was facially neutral and nondiscriminatory because all parties were "subject to the same requirements" and had "an evenhanded chance at achieving political party status and a first-tier ballot position." *Id.* at 717. The court also determined that the appellant exaggerated the difficulty of entering the first tier because first-tier status only required candidates for any office to receive ten percent of the vote in either of the two preceding statewide general elections. *Id.* Once a party met this requirement,

the statute determined its position in the first tier by lot. *Id.* at 712. Therefore, no party was "automatically elevated to the top of the ballot." *Id.* at 717. The defendants here rely on the Fourth Circuit's statement that "[a]ccess to a preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern." *Id.* at 719 (quoting *New Alliance Party v. N.Y. State Bd. of Elections*, 861 F. Supp. 282, 295 (S.D.N.Y. 1994)). But this observation must be understood in light of the court's finding that Virginia's law was politically neutral and nondiscriminatory. While the benefit of an advantageous ballot position is not necessarily a constitutional concern, a politically biased and discriminatory allocation of that benefit is.

Here, the alleged facts raise a reasonable inference that West Virginia's Ballot Order Statute is not politically neutral or nondiscriminatory and thus creates a constitutionally significant burden on the plaintiffs' First and Fourteenth Amendment rights. Unlike Virginia's statute that determined major parties' position by lot, West Virginia awards the alleged benefit of the primacy effect to candidates based on their political affiliation with the last presidential candidate who received the most votes. In doing so, the Statute "automatically elevate[s]" candidates "to the top of the ballot" based on their party affiliation. *Id*. at 717. In this sense, West Virginia's Statute is more akin to the unconstitutional Oklahoma law in *Graves v. McElderry* that automatically placed Democratic candidates at the top of the ballot. 946 F. Supp. 1569 (W.D. Okla. 1996); *see also Jacobson v. Lee*, 411 F. Supp. 3d 1249, 1282–83 (N.D. Fla. 2019) (holding Florida's ballot order scheme that listed members of the governor's political party first was politically discriminatory and unconstitutional). The party benefiting from West Virginia's law may shift over time, but this does not mean the Statute is nonpartisan. A statute may still be "unquestionably a partisan

provision" even if it is only a "fair-weather friend" whose "inclination may change depending on the prevailing political breeze." *Jacobson*, 411 F. Supp. 3d at 1276–77.

To the extent the Court identifies a burden on the plaintiffs' constitutional rights caused by the Ballot Order Statute, McCormick argues that burden is too speculative to constitute an injury in fact. ECF No. 15, at 7–8. She argues the Amended Complaint only supports that vote dilution through the primacy effect *may* occur in West Virginia's next election, not that it will occur. *Id*. However, the Amended Complaint alleges the primacy effect is universal and occurs in West Virginia "on every ballot, in every partisan race, in every general election." ECF No. 7 ¶¶ 3–4. The plaintiffs support this claim with specific citations to case law and academic research. *Id.* ¶¶ 25–26. The lack of support specific to West Virginian elections does not undermine the plaintiffs' alleged injury, for it would be unreasonable to infer West Virginia is exempt from the widespread phenomenon alleged by the plaintiffs. McCormick also argues that the Democratic Party's control of the West Virginia Senate and House of Delegates for much of the past twenty years refutes that the plaintiffs have been and will be harmed by the primacy effect, but this is a non sequitor. ECF No. 15, at 8. A candidate's ultimate victory does not mean that vote dilution through the primacy effect has not occurred. Rather, a victory only suggests the candidate was popular enough to overcome the electoral disadvantage of not being first on the ballot.

In addition to finding the alleged burden here is more severe than in *Alcorn*, the Court also notes that the state interests raised in *Alcorn* do not have the same obvious weight in this case. The first interest addressed in *Alcorn* was reducing voter confusion and speeding the voting process. 826 F.3d at 719. The court held that adopting the appellant's request for random ballot ordering would confuse and slow voters by removing major party candidates, whom most people vote for, from the top of the ballot. *Id*. But here, the plaintiffs seek a system that would keep Democrats and

Republicans in the top two ballot positions. ECF No. 7, at 17. The second state interest in *Alcorn* was creating a symmetrical pattern on the ballot, which the state achieved by determining party order in the first two tiers by lot and replicating this order for all offices. 826 F.3d at 720. The Court cannot find based on the pleadings that this interest is implicated here because the plaintiffs did not propose a specific ballot ordering alternative in their requested relief. *See* ECF No. 7, at 17. The third state interest in *Alcorn* of maintaining a stable political system is the most relevant here because the current law pegs ballot order to West Virginians' past presidential preference, and it is "entirely legitimate for states to correlate ballot placement with demonstrated levels of public support." 826 F.3d at 720. Yet, the challengers in *Alcorn* sought to elevate minor parties and independent candidates with significantly less public support to higher ballot positions. *Id.* at 720–21. Here, the plaintiffs request a system that only gives Republican and Democratic candidates an equal opportunity to be listed first. ECF No. 7, at 17. Both of these parties enjoy widespread public support and form the pillars of the country's stable two-party system.

The Court therefore concludes the plaintiffs sufficiently allege an imminent injury in fact based on the Ballot Order Statute's burdening of their First and Fourteenth Amendment rights. Dismissal on these grounds is not warranted.

**B. The plaintiffs' claims against McCormick survive because some of the plaintiffs have standing as to McCormick.**

As previously stated, a party has standing to sue if the party suffered an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. McCormick argues that plaintiffs Dakota Nelson and Belinda Biafore do not have standing as to McCormick because neither Nelson nor Biafore will be on the ballot or vote in Kanawha County where McCormick administers elections. ECF No. 15, at 9–10. In other

words, any injury to Nelson and Biafore based on the primacy effect is not "fairly traceable" to McCormick. *Lujan*, 504 U.S. at 560.

McCormick's argument rests on the faulty premise that every plaintiff must have standing as to every defendant. The Supreme Court has made clear that "the presence of one party with standing is sufficient to satisfy Article Ill's case-or-controversy requirement." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (citation omitted); *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999) (holding a case is justiciable if some but not all plaintiffs have standing as to a particular defendant); *Bostic v. Schaefer*, 760 F.3d 352, 370–71 (4th Cir. 2014) (same). The plaintiffs' claims therefore survive as long as one plaintiff satisfies the standing requirements as to McCormick.

McCormick contests the standing of Elaine Harris, the West Virginia Democratic Party, and the West Virginia Democratic House Legislative Committee only on the limited grounds that a favorable decision against McCormick will not redress the entirety of the alleged injury. ECF No. 26, at 6. McCormick argues she does not control ballots in other West Virginia counties, so the alleged injury would persist outside of Kanawha County even if the Court decided in the plaintiffs' favor. *Id.* However, as discussed thoroughly in section D, the Court can accord complete relief among the existing parties. Therefore, no deficiency in standing prevents the plaintiffs' claims from proceeding against McCormick.

**C. McCormick is a proper party and her inclusion is not duplicative.**

McCormick argues an official capacity claim against her is duplicative because the plaintiffs have also included the Secretary of State, Mac Warner, as a defendant. ECF No. 15, at 10–12. For support, McCormick relies on the Fourth Circuit's decision in *Love-Lane v. Martin*. ECF No. 15, at 10–11; 355 F.3d 766 (4th Cir. 2004). In *Love-Lane*, the Fourth Circuit affirmed

the district court's dismissal of an official capacity claim against a school superintendent because it was duplicative of the claim against the board of education. 355 F.3d at 783. *Love-Lane* therefore addressed a claim against a government agency and an official capacity claim against an officer of that agency. *Id.*; *see also Ky. v. Graham*, 473 U.S. 159, 165–66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). However, in West Virginia, county governments are separate political subdivisions and are not agencies of the state. W. Va. Code §§ 29-12A-3, 14-2-3. Therefore, including both McCormick as Clerk of Kanawha County and Warner as Secretary of State is not duplicative.

McCormick also relies on this Court's decision in *McGee v. Cole* to support her dismissal. ECF No. 15, at 11; 115 F. Supp. 3d 765. In *McGee*, the Court awarded attorney's fees against the state rather than the two counties involved in a challenge to West Virginia's same-sex marriage ban. 115 F. Supp. 3d at 772–73. The Court held that the defendant county clerks were acting as state agents rather than county officials because they implemented a state law and not a county rule or policy. *Id.* at 773. However, the issue of who is responsible for attorney's fees in a successful challenge against a county official for enforcing an unconstitutional state law is separate from whether the county official is a proper defendant. In *Bostic v. Schaefer*, which *McGee* relied upon, the Fourth Circuit held a county official charged with enforcing an unconstitutional statute was a proper defendant because the official had "some connection with the enforcement of the act." 760 F.3d 352, 371 n.3 (4th Cir. 2014) (citing *Lytle v. Griffith*, 240 F.3d 404, 412 (4th Cir. 2001). As chair of Kanawha County's ballot commission, which prepares the county's ballots, McCormick's connection to the enforcement of the Ballot Order Statute is indisputable, so she is a proper defendant in this suit. W. Va. Code § 3-1-19(c).

**D. The Court can accord complete relief among the existing parties.**

Federal Rule of Civil Procedure 19 states that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties . . . ." FED. R. CIV. P. 19(a)(1). McCormick argues the Court should dismiss this case under Rule 19 because the plaintiffs have not joined West Virginia's fifty-four other county clerks, who are necessary for plaintiffs to achieve the statewide change in elections they seek. ECF No. 15, at 12–13. Warner filed a separate response to agree with McCormick and likewise argue for dismissal under Rule 19. ECF No. 21, at 4–5.

The defendants, however, confuse the plaintiffs' ultimate goal—a statewide change in ballot ordering—with the specific relief sought in this case. In their Amended Complaint, the plaintiffs request: (1) a declaration that the Ballot Order Statute is unconstitutional; (2) an injunction prohibiting McCormick, Warner, and their agents (and the defendant class should the plaintiffs move for its certification[1]) from implementing the Ballot Order Statute; (3) attorney's fees and costs; and (4) other just and proper relief. ECF No. 7, at 17. No other parties are necessary for the Court to grant this relief against McCormick and Warner like the plaintiffs request.

Warner argues that if the Court rules in the plaintiffs' favor, "the only way to ensure that the individual county clerks are bound by and follow such holding is for the individual county clerks to have been joined as parties to this action." ECF No. 21, at 4. "Otherwise," Warner continues, "the nonparty county clerks, not bound by the judgment, could continue implementing the Ballot Order Statute as written." *Id.* However, a declaration by this Court that the Statute is

---

[1] The Amended Complaint requests a defendant class of ballot commissioners, which would bind all of the state's county clerks to this Court's judgment. ECF No. 15 ¶ 24. The plaintiffs have not moved to certify the defendant class, so addressing the request at this time is premature.

-10-

unconstitutional would strike it down entirely, not just as applied to McCormick and Warner. And, under the doctrine of res judicata, a declaratory judgment would preclude other county clerks from relitigating the issue. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). If the plaintiffs are successful, other county clerks will not be enjoined from enforcing the Statute. But Warner's suggestion that these clerks would create liability by continuing to implement an unconstitutional law, and that he would permit them to do so as the state's chief elections official, defies reason.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Vera McCormick's Motion to Dismiss, ECF No. 14. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: March 17, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE