**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

DAKOTA NELSON;
BELINDA BIAFORE, individually and
as Chairperson of the West Virginia
Democratic Party; ELAINE A. HARRIS,
individually and as Chairperson of the Kanawha
County Democratic Executive Committee;
WEST VIRGINIA DEMOCRATIC PARTY; and
WEST VIRGINIA DEMOCRATIC HOUSE
LEGISLATIVE COMMITTEE,

Plaintiffs,

v.                                                    Civil Action No. 3:19-cv-00898

MAC WARNER in his official capacity as
WEST VIRGINIA SECRETARY OF STATE and
VERA MCCORMICK, in her official capacity as
CLERK OF KANAWHA COUNTY,
WEST VIRGINIA,

Defendants.


**SECRETARY OF STATE MAC WARNER'S MEMORANDUM**
**OF LAW IN SUPPORT OF EMERGENCY MOTION TO STAY**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT ....................................................................................................2

SUMMARY OF ARGUMENT ...........................................................................4

ARGUMENT .....................................................................................................4

    I.    The Secretary And Public Will Be Irreparably Harmed Without A Stay ................................5

    II.   Plaintiffs' Harm If The Stay Remains In Place Would Be Minimal And Outweighed By Public

    Interest ............................................................................................9

    III.  The Secretary Is Likely To Prevail On Appeal ...................................................10

        A.  Plaintiffs Lack Standing .........................................................................10

        B.  The Ballot Order Statute Is Constitutional ..............................................14

CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ........................................................................................... 14, 15

*Becker v. FEC*,
    230 F.3d 381 (1st Cir. 2000) ................................................................................. 12

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009) .................................................................................. 12

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ..................................................................................... 14, 15, 16

*Buscemi v. Bell*,
    964 F.3d 252 (4th Cir. 2020) ......................................................................... 10, 12, 17

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .............................................................................................. 10

*Clingman v. Beaver*,
    544 U.S. 581 (2005) .............................................................................................. 14

*Clough v. Guzzi*,
    416 F. Supp. 1057 (D. Mass. 1976) ...................................................................... 16

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008) ..................................................................................... 14, 16, 17

*Curtis v. Propel Prop. Tax Funding, LLC*,
    915 F.3d 234 (4th Cir. 2019) ................................................................................. 10

*David v. Akers*,
    549 F.2d 120 (9th Cir. 1977) ................................................................................. 13

*Democratic–Republican Org. of N.J. v. Guadagno*,
    900 F. Supp. 2d 447 (D.N.J. 2012) ....................................................................... 18

*Flinn v. Gordon*,
    775 F.2d 1551 (11th Cir. 1985) ............................................................................. 12

*Frank v. Walker*,
    2016 WL 4224616 (7th Cir. Aug. 10, 2014) (*per curiam*) ..................................... 8

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ........................................................................... 10

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) .......................................................... 11, 12, 13

*Graves v. McElderry*,
   946 F. Supp. 1569 (W.D. Okla. 1996) ................................................. 19

*Green Party of Tenn. v. Hargett*,
   2016 WL 4379150 (M.D. Tenn. Aug. 17, 2016), *aff'd*, 2017 WL 4011854 (6th
   Cir. May 11, 2017) (*per curiam*) ....................................................... 18

*Heller v. Doe*,
   509 U.S. 312 (1993) ........................................................................... 20

*Home Depot U.S.A., Inc. v. Jackson*,
   139 S. Ct. 1743 (2019) ...................................................................... 10

*Husted v. Ohio State Conference of the N.A.A.C.P.*,
   573 U.S. 988 (2014) (*per curiam*) ...................................................... 7

*Jacobson v. Florida Secretary of State*.
   957 F.3d 1193 (11th Cir. 2020) ................................................ 11, 12, 13

*Jacobson v. Lee*,
   411 F. Supp. 3d 1249 (N.D. Fla. 2019) .............................................. 11

*Lair v. Bullock*,
   697 F.3d 1200 (9th Cir. 2012) ........................................................ 8, 9

*Lewis v. Craft*,
   1995 WL 555636 (6th Cir. Sept. 19, 1995) (*per curiam*) .................... 13

*Libertarian Party of Colo. v. Buckley*,
   938 F. Supp. 687 (D. Colo. 1996) ...................................................... 18

*Libertarian Party of Va. v. Alcorn*,
   826 F.3d 708 (4th Cir. 2016) ............................................ 14, 15, 16, 17, 18, 19

*Little v. Reclaim Idaho*,
   2020 WL 4360897 (U.S. July 30, 2020) (*per curiam*) .......................... 6

iii

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Mann v. Powell*,
  314 F. Supp. 677 (N.D. Ill. 1969) (*per curiam*), *aff'd*, 398 U.S. 955 (1970) (*per curiam*) .......................................................................................................................... 19

*Marcellus v. Va. State Bd. of Elections*,
  168 F. Supp. 3d 865 (E.D. Va. 2016) ................................................................................. 15

*Maryland v. King*,
  133 S. Ct. 1 (2012) (Roberts, C.J., in chambers) ................................................................ 8

*Mecinas v. Hobbs*,
  2020 WL 3472552 (D. Ariz. June 25, 2020) ...................................................................... 11

*Meyer v. Texas*,
  2011 WL 1806524 (S.D. Tex. May 11, 2011) ................................................................ 16, 17

*Miller v. Hughs*,
  2020 WL 4187911 (W.D. Tex. July 10, 2020) .............................................................. 11, 12

*Munro v. Socialist Workers Party*,
  479 U.S. 189 (1986) .......................................................................................................... 17

*New Alliance Party v. N.Y. State Bd. of Elections*,
  861 F. Supp. 282 (S.D.N.Y. 1994) ............................................................................ 15, 16, 19

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) (Rehnquist, J., in chambers) ............................................................ 8

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................................................. 5

*Nordinger v. Hahn*,
  505 U.S. 1 (1992) .............................................................................................................. 19

*North Carolina v. League of Women Voters of N.C.*,
  574 U.S. 927 (2014) (*per curiam*) ..................................................................................... 7

*Ohio Valley Envtl. Coal., Inc. v. Pruitt*,
  2017 WL 1712527 (S.D.W. Va. May 2, 2017) ..................................................................... 4

*Pavek v. Donald J. Trump for President, Inc.*,
  2020 WL 4381845 (8th Cir. July 31, 2020) (*per curiam*) ................................................. 14

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Pavek v. Simon,*
  2020 WL 3183249 (D. Minn. June 15, 2020) ...................................................... 14

*Pisano v. Strach,*
  743 F.3d 927 (4th Cir. 2014) .............................................................................. 17

*Purcell v. Gonzalez,*
  549 U.S. 1 (2006) (*per curiam*) ......................................................................... 5

*Raines v. Byrd,*
  521 U.S. 811 (1997) ........................................................................................... 11

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
  140 S. Ct. 1205 (2020) (*per curiam*) ............................................................. 5, 7

*Reynolds v. Sims,*
  377 U.S. 533 (1964) ........................................................................................... 15

*Roe v. Dep't of Def.,*
  947 F.3d 207 (4th Cir. 2020) ................................................................................ 5

*S. Bay United Pentecostal Church v. Newsom,*
  140 S. Ct. 1613 (2020) (*per curiam*) .................................................................. 6

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,*
  713 F.3d 175 (4th Cir. 2013) .............................................................................. 13

*Sangmeister v. Woodard,*
  565 F.2d 460 (7th Cir. 1977) .............................................................................. 19

*Sarvis v. Judd,*
  80 F. Supp. 3d 692 (E.D. Va. 2015) ...................................................... 16, 17, 18

*Schaefer v. Lamone,*
  2006 WL 8456798 (D. Md. Nov. 30, 2006), *aff'd*, 248 F. App'x 484 (4th Cir.
  2007) (*per curiam*) .......................................................................... 16, 17, 18, 20

*Sierra Club v. U.S. Dep't of the Interior,*
  899 F.3d 260 (4th Cir. 2018) .............................................................................. 13

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ....................................................................................... 10

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................. 13

*Tex. Dem. Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ............................................................................... 5, 6, 9

*Thompson v. Dewine*,
    959 F.3d 804 (6th Cir. 2020) (*per curiam*) ......................................................... 5, 9

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) ................................................................................................. 17

*Ulland v. Growe*,
    262 N.W.2d 412 (Minn. 1978) ................................................................................ 15

*Veasey v. Perry*,
    135 S. Ct. 9 (2014) (*per curiam*) ............................................................................ 7

*Williams v. Pryor*,
    240 F.3d 944 (11th Cir. 2001) ................................................................................ 19

*Woollard v. Gallagher*,
    712 F.3d 865 (4th Cir. 2013) .................................................................................... 9

**Constitutional Provisions**

U.S. Const. art. III, § 2 ................................................................................................. 10

**Statutes**

W. Va. Code § 3-6-2 ................................................................................................ 1, 3

**Rules**

Fed. R. Civ. Pro. 62(c) ................................................................................................ 4

**Other Authorities**

Richard L. Hasen, *Reining in the* Purcell *Principle*, 43 Fla. St. U. L. Rev. 427, 428
    (2016). ...................................................................................................................... 1

## INTRODUCTION

Since 1991, West Virginia Code § 3-6-2(c)(2) ("the Ballot Order Statute") has governed candidates' ballot placement in partisan elections. Plaintiffs—the West Virginia Democratic Party and the West Virginia Democratic House Legislative Committee (together, "Organizational Plaintiffs"), along with Elaine Harris, Dakota Nelson, and Belinda Biafore (collectively, "Individual Plaintiffs")—did not challenge the statute though it had been on the books for over 28 years. Then, Plaintiffs sought to enjoin the statute at a point when, "despite best efforts," this matter could not be resolved before what the Court rightly "consider[ed] to be the eve of the ballot." *See* Trial Transcript at 738.[1]

Less than one month before the statutory deadline for setting candidates' ballot positions—and in the middle of a global pandemic—this Court properly stayed its injunction barring enforcement of the Ballot Order Statute. Plaintiffs motioned this Court to enter an unstayed judgment. ECF No. 108. This Court granted Plaintiffs' motion and reversed its decision to stay its injunction. ECF No. 125.

The Court's original decision was correct. This is not the time to force a change to West Virginia's election system. A foundational principle of election law is that "courts should not issue orders which change election rules in the period just before the election." Richard L. Hasen, *Reining in the* Purcell *Principle*, 43 Fla. St. U. L. Rev. 427, 428 (2016). Because of the *Purcell* principle and as otherwise discussed below, this Court should stay the final judgment pending appeal.

---

[1] The transcripts of July 27, 28, 29, and 30 are continuously numbered. So citations include only the page number.

## STATEMENT

**1.** During trial, the Secretary and his general counsel testified about the Secretary's powers and the challenges of changing how candidates are ordered so close to the election.  The Secretary testified that if the Court enjoined enforcement of the Ballot Order Statute, he lacked the statutory authority to order ballot commissioners arrange the ballot in a particular manner.  Trial Transcript at 45-46.  Nevertheless, the Secretary's general counsel testified that the Secretary would comply with any order by this Court.  *Id.* at 298.  But any last-minute changes to ballot order will cause significant difficulties for the Secretary, the ballot commissioners, and the public.

The Secretary's general counsel testified about the difficulties with changing the ballot order at the last minute.  He testified that it would cause problems with publishing sample ballots in the newspaper, posting sample ballots on the doors of precincts, educating the public, and determining how to list candidates.  *See*, *e.g.*, Trial Transcript at 276-78.  He similarly testified that in the current pandemic climate, difficulties would be heightened for smaller counties.  *See id.* at 299.  Although counties like Kanawha and Monongalia might have the manpower to make the necessary decisions and changes, other counties are severely short staffed and would struggle to meet statutory deadlines.  Plaintiffs did not present any evidence contradicting the general counsel's testimony.

Other than the Secretary's testimony and his general counsel's testimony, Plaintiffs presented no evidence about the immense burdens that the ballot commissioners and Secretary will face if forced to implement this Court's holding for the August 25 deadline preceding the November 2020 election.  Although the parties stipulated about the technological possibilities of the voting machines and the burdens on the Kanawha County Clerk, *see* Joint Exhibits 1 & 2, what

is technically possible differs from what is reasonable in the midst of the circumstances presently confronting election officials, including but not limited to the COVID-19 pandemic.

**2.** After a bench trial, this Court found that the Ballot Order Statute was unconstitutional and enjoined its enforcement. But it also stayed that order until after the November 2020 election. In staying its injunction, the Court recognized that we are on "the eve" of the November 2020 election, more imminently the ballot ordering deadline. Trial Transcript at 738. The Court informed Plaintiffs that they could move to lift the stay. Plaintiffs, however, needed to establish that lifting the stay would not disrupt the preparation of the ballots and the November 2020 election more generally.

Plaintiffs then moved for entry of an unstayed final judgment. This Court granted the motion and entered an unstayed final judgment. The Secretary subsequently appealed the final judgment to the United States Court of Appeals for the Fourth Circuit. He now moves for a stay pending appeal.

**3.** Candidates' ballot order must be determined on August 25, 2020. *See* W. Va. Code § 3-6-2(d)(2). The State's election system involves and affects functionally all West Virginia residents, whether they be election officials or voters; it cannot be changed at the flick of a switch or without consequence. As explained by the Secretary's general counsel, the ballot commissioners, as well as the Secretary, must deliberate and make several important decisions to implement this Court's order. These changes are significant, and all related communications and efforts must be taken with care in the best of times—and these are not the best of times. Many of the State's 165 ballot commissioners would be well overmatched because of their current staff levels, the pandemic's impact on election workers, and the short time frame to discuss, understand, effectuate, and communicate to the public any change at this juncture.

## SUMMARY OF ARGUMENT

**I.** With less than one month before the August 25 deadline for preparing the ballots, the Secretary and the public will suffer significant, irreparable harm should this Court's order take immediate effect.  That is why the Supreme Court formulated the *Purcell* principle.  Under that principle, federal courts will not alter election laws on the eve of an election.  As this Court correctly found that we are on the eve of the ballot deadline, and thus for all intents and purposes the eve of the November 2020 general election as it relates to the Ballot Order Statute's effects, the Secretary and the public will be irreparably injured by not staying the final judgment.

**II.** The harm Plaintiffs face without a stay is minimal.  For almost 30 years, Plaintiffs were content with the Ballot Order Statute.  The chances of Organizational Plaintiffs' members and Mr. Nelson appearing first on the ballot under this Court's final judgment is one in four.  And Individual Plaintiffs' votes will be counted the same with or without this Court's final judgment taking effect before the appeal is decided.  Compared to the irreparable harm the State and public face without a stay, the inconvenience of a stay for Plaintiffs is minor.

**III.** There is a high likelihood that the Secretary will prevail on the merits of the appeal. Four federal court decisions—including two circuits—are currently effective in cases challenging ballot order statutes.  All have held that the challenges failed for lack of jurisdiction over the complaint or that the statute was not unconstitutional.  The Secretary needs to prevail on only one of these arguments for the Fourth Circuit to vacate or reverse the injunction.

## ARGUMENT

"[F]ederal district courts [have] the power to stay a final judgment granting an injunction pending its appeal."  *Ohio Valley Envtl. Coal., Inc. v. Pruitt*, 2017 WL 1712527, *2 (S.D.W. Va. May 2, 2017) (citing Fed. R. Civ. Pro. 62(c)).  Courts must consider four factors when deciding

whether to stay an injunction pending appeal: (1) "whether the applicant will be irreparably injured absent a stay"; (2) the public interest; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I.  The Secretary And Public Will Be Irreparably Harmed Without A Stay.

The first two factors merge when a state actor is seeking or opposing a stay. *See Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020) (citations omitted).  Failure to stay the injunction would irreparably harm the Secretary and the public interest.

Last-minute changes to the voting system substantially burden the State and the public. The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (*per curiam*); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (*per curiam*) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls.  As an election draws closer, that risk will increase.").  These injuries are "particularly acute" here because the Court's order comes less than one month before the relevant statutory deadline.  *Tex. Dem. Party v. Abbott*, 961 F.3d 389, 411 (5th Cir. 2020) (decision affecting an election taking place "in a matter of weeks").

Further, "[t]hese concerns are magnified here where the new election procedures proffered by Plaintiffs threaten to take the state into unchartered waters" and "interim deadlines that affect . . . the State are imminent." *Thompson v. Dewine*, 959 F.3d 804, 812-13 (6th Cir. 2020) (*per curiam*).  Few—if any—of the current ballot commissioners or the Secretary have decided how to arrange candidates on the ballot absent the Ballot Order Statute.  But that is what this Court's final judgment requires.

This concern escalates "where, as here, . . . local officials are actively shaping their response to changing facts on the ground." *Tex. Dem. Party*, 961 F.3d at 412 (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Roberts, C.J., concurring)). Local officials are continuing to shape their response to the COVID-19 pandemic.  Right now, some courts in the state are closed because a prosecuting attorney tested positive for the disease. And if the same thing happens to a county clerk employee, a similar shutdown of the clerk's office could happen, not to mention other consequential concerns regarding the pandemic and the 2020 election generally.

So, the Supreme Court of the United States applied this *Purcell* principle, even as recently as last Thursday.  In *Little v. Reclaim Idaho*, the Court stayed an order changing Idaho's election rules on the eve of the November 2020 election.  2020 WL 4360897 (U.S. July 30, 2020) (*per curiam*).  As Chief Justice Roberts explained, "the present strain imposed by this structural injunction on the time and resources of state and local officials, and the costs to the State will continue to add up over the coming weeks" without a stay.  *Id.* at *2 (Roberts, C.J., concurring).

The reasoning of that decision counsels in favor of a stay.  In *Reclaim Idaho*, the District Court ordered the state and local officials to disregard a long-standing election process and create a new system in a matter of days.  Here, the Court's final judgment requires the Secretary and/or ballot commissioners create a new process for determining ballot order from whole cloth in a matter of days and then efficiently administer the system while short staffed.  Again, this is the type of last-minute change foreclosed by *Purcell* and *Reclaim Idaho.*

*Reclaim Idaho* also reaffirms that we are on the eve of the election.  *Reclaim Idaho* was issued the same day as this Court issued its oral findings of fact and conclusions of law.  And the

Supreme Court found that was too close to the upcoming November 2020 election and applied the *Purcell* principle.

Earlier this year, the Supreme Court soundly rejected lower courts' attempts to impose new election rules in Wisconsin on the eve of the election. In terse language, the Supreme Court held that the district court "contravened [its] precedents" by changing election laws on the eve of an election. *Republican Nat'l Comm.*, 140 S. Ct. at 1207 (citations omitted). And this Court already found that we are on the "eve" of the 2020 general election.

But, the Supreme Court's continued practice of staying orders changing election laws on the eve of an election is not new. In 2014, the Supreme Court issued a series of stays affirming this principle. In *Husted v. Ohio State Conference of the N.A.A.C.P.*, the Court stayed an injunction changing Ohio's early voting laws 61 days before Election Day. 573 U.S. 988, 988 (2014) (*per curiam*). Less than a month later, the Court held The Supreme Court of the United States stayed the Fourth Circuit's decision because it was on the eve of the relevant election. *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927, 927 (2014) (*per curiam*). And, ten days later, held that the Fifth Circuit properly stayed a district court's injunction of Texas's voter identification law entered one month prior to the election. *Veasey v. Perry*, 135 S. Ct. 9, 9 (2014) (*per curiam*).

The Supreme Court has repeatedly reaffirmed that last-minute election changes should be stayed under the well-settled *Purcell* principle. Perhaps this informed the Court's expectation that "it's pretty likely that a circuit panel would decide to stay this." Trial Transcript at 745. A stay pending appeal would follow this well-settled principle.

Since 1991, the public has known candidates' ballot position years in advance. "This has created a background upon which the candidates [the Secretary, and voters] formed their . . .

expectations." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012).  Allowing the injunction to take effect would "throw a previously stable system into chaos."  *Id.*; *see also Frank v. Walker*, 2016 WL 4224616, *1 (7th Cir. Aug. 10, 2014) (*per curiam*) ("[D]isruption of the state's electoral system in the interim will cause irreparable injury.").

The date for setting candidates' ballot position is less than three weeks away.  Normally, voters know at least 21 months in advance what the candidates' ballot positions will be based on the previous presidential election results.  So there is no need to educate voters about who appears first on the ballot.  There is, however, a need to educate voters when a change is made so close to the upcoming election for reasons of expectation, propriety, and transparency.  Ignoring this reality shows that Plaintiffs do not fully appreciate and seek to downplay the magnitude of the broader state interests in play here.

There are significant hurdles to quickly implementing this Court's final judgment.  These include but are not limited to researching how to properly and transparently implement an alleged constitutional method of determining ballot order, determining the proper party (or parties) for conducting party order drawing, designing and publishing proper public notice and education to voters of the last-minute changes, and identifying other systems that may require additional changes or programming not set forth in current law.  For example, the election night reporting system file format may need to be reprogramed by a third-party vendor.  The unique factual scenario of this case therefore cautions against disregarding the *Purcell* principle.

*Second*, there is substantial injury even without the *Purcell* principle.  A State suffers irreparable injury any time it is prohibited from enforcing a law passed by the duly elected representatives of the people.  *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)

(Rehnquist, J., in chambers)); *Tex. Dem. Party*, 961 F.3d at 411 (5th Cir. 2020). And "giving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest." *Thompson* 959 F.3d at 812. This "court's injunction prevents the State from effectuating the Legislature's choice and hence imposes irreparable injury." *Tex. Dem. Party*, 961 F.3d at 411.

This important interest in enforcing duly enacted legislation is why the Fourth Circuit frequently stays injunctions barring enforcement of statutes. *See, e.g.*, *Woollard v. Gallagher*, 712 F.3d 865, 873 (4th Cir. 2013). The same applies here. Preventing the Secretary from enforcing the Ballot Order Statute is a significant, irreparable injury. As such, even without the *Purcell* principle, these first two factors weigh strongly in favor of staying the injunction pending appeal.

## II. Plaintiffs' Harm If The Stay Remains In Place Would Be Minimal And Outweighed By Public Interest.

Plaintiffs will suffer little harm, if any, by staying the final judgment. For almost 30 years, Plaintiffs operated under the Ballot Order Statute without concern. Although Organizational Plaintiffs believe they will relatively benefit from immediate enforcement of the injunction against the Ballot Order Statute, that is not guaranteed. Mr. Nelson, too, will not automatically benefit from the injunction taking immediate effect. And it is unquestionable that Individual Plaintiffs will have their votes counted the same as all other voters even if the Court stays its order. So "[a]ny harm that might be felt" by such a temporary delay "would, at most, be minimal and vastly outweighed by the public interest." *Lair*, 697 F.3d at 1215.

The public interest in maintaining the stay is notable here, particularly in light of the very recent decisions on similar statutes that clearly tilt in the direction that the Ballot Order Statute "is likely constitutional." *Thompson*, 959 F.3d at 812. As discussed below, the Secretary is likely to succeed on the merits of the appeal. So even the minor burden Plaintiffs will face without a stay

must be discounted because the chance of them maintaining this victory on appeal is lower than the chances that the Secretary will prevail on appeal.

## III.     The Secretary Is Likely To Prevail On Appeal.

The decisions of four federal courts—two circuits and two unrelated districts—in ballot order cases are currently in effect.  All have found that they lack jurisdiction or that a comparable ballot order statute is constitutional.  The Fourth Circuit is therefore likely to find that Plaintiffs lack standing and this Court lacked jurisdiction over this case.

### A.     Plaintiffs Lack Standing.

As "courts of limited jurisdiction," federal courts can only adjudicate actual "cases" and "controversies."  *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quoting U.S. Const. art. III, § 2).  "[T]he irreducible constitutional minimum of standing consists of three elements:  The Plaintiffs must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation omitted).  Plaintiffs bear the burden of establishing standing.  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

"When a plaintiff challenges the constitutionality of a statute, the plaintiff must show that there is a realistic danger that the plaintiff will sustain[ ] a direct injury as a result of the terms of the statute."  *Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020) (quoting *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 241 (4th Cir. 2019) (internal quotations omitted)).  "[A]llegations of possible future injury are not sufficient" to establish standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation and emphasis omitted).

Plaintiffs began this litigation by relying on *Jacobson v. Lee*, 411 F. Supp. 3d 1249 (N.D. Fla. 2019). Now, however, they are avoiding that decision . The reason is obvious: It was reversed by the Eleventh Circuit in relatively quick order following argument there.

There, three voters and six organizations alleged that Florida's ballot order statute basing ballot position on the last gubernatorial election gave an unfair advantage to the Republican Party through the primacy effect. *Jacobson v. Florida Secretary of State*. 957 F.3d 1193, 1198 (11th Cir. 2020). As to the individual plaintiffs, the court explained that because the right to vote is "individual and personal in nature" the individual voters had a protected interest only in their ability to vote and having their votes would be weighted the same as other voters. *Id.* at 1202 (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018)).

As to the organizational plaintiffs, the Eleventh Circuit noted that "the average measure of partisan advantage on which the organizations rely tells us nothing about whether ballot order has affected or will affect any particular candidate in any particular election" as well. *Jacobson*, 957 F.3d at 1206. The Western District of Texas held the same in a nearly identical case. *See Miller v. Hughs*, 2020 WL 4187911, *4-5 (W.D. Tex. July 10, 2020); *cf. Mecinas v. Hobbs*, 2020 WL 3472552, at *14 (D. Ariz. June 25, 2020) (court lacked jurisdiction over challenge to Arizona's ballot order statute).

Supreme Court precedent undergirds these decisions. Individual Plaintiffs have only provided evidence of the possibility that their preferred candidate may have a lower chance of winning due to the primacy effect. But "a candidate's electoral loss does not, by itself, injure those who voted for the candidate" because "voters have no judicially enforceable interest in the outcome of an election" but interest "in their ability to vote and in their vote being given the same weight as" other voters. *Jacobson*, 957 F.3d at 1202 (citing *Raines v. Byrd*, 521 U.S. 811, 819, 824, 830

(1997) (emphasis removed)).  So "absent any evidence of vote dilution or nullification, a citizen is not injured by the simple fact that a candidate for whom she votes loses or stands to lose an election." *Id.* at 1202-03 (citing *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009); *Becker v. FEC*, 230 F.3d 381, 390 (1st Cir. 2000)); *see also Buscemi*, 964 F.3d at 261.

Here, Individual Plaintiffs proved neither.  They only provided evidence of the average primacy effect in West Virginia elections.  As *Jacobson* explained, *Gill* established this was "insufficient to prove that her individual vote will be diluted." *Jacobson*, 957 F.3d at 1204 (citing *Gill*, 138 S. Ct. at 1933).

Nelson concedes he has not been restricted from appearing on the ballot.  Instead, like the voters in *Jacobson*, Nelson simply asserts that voters are less likely to select him because of the average primacy effect.  *See* Trial Transcript at 96.  This is insufficient to establish Nelson has standing for three reasons.

*First*, Nelson failed to prove that the primacy effect will affect his particular race. Plaintiffs' expert excluded multi-member district races—including Nelson's—from his calculations and expert report.  This is unsurprising as Plaintiffs' expert admits the effect varies from race to race.  *See* Plaintiffs' Exhibit 2.  Thus, Nelson's claim that the primacy effect is present in almost every race is insufficient to establish an injury-in-fact for the same reasons it is insufficient for voters as "the average measure of partisan advantage on which the organizations rely tells us nothing about whether ballot order has affected or will affect any particular candidate in any particular election." *Jacobson*, 957 F.3d at 1206; *see also Miller*, 2020 WL 4187911 at *5.

*Second*, even if the primacy effect is present in his race, that is insufficient to prove a constitutional injury.  Nelson lacks a federally protected right to winning an election.  *Flinn v.*

*Gordon*, 775 F.2d 1551, 1554 (11th Cir. 1985); *see also Lewis v. Craft*, 1995 WL 555636, *4 (6th Cir. Sept. 19, 1995) (*per curiam*); *David v. Akers*, 549 F.2d 120, 127 (9th Cir. 1977).

*Finally*, Nelson failed to show this Court's order will at least "mitigate . . . the alleged harm" which is essential for Article III standing. *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018). Nelson concedes that, no matter how the ballot is ordered—other than his party always being listed first—he will continue to suffer because a percentage of irrational voters will continue to pick the first-listed candidate. *See* Trial Transcript at 103-04. No court order will eliminate or even mitigate the existence of uninformed or irrational voters. Nelson thus also lacks standing.

Organizational Plaintiffs lack standing to sue on their members' behalves for the same reasons Nelson lacks standing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013) (citation omitted); *see also Jacobson*, 957 F.3d at 1204 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009)).

They also lack standing to sue on their own behalf. As explained in *Gill*, group political interests are simply insufficient for Article III standing. *Gill*, 138 S. Ct. at 1931-34. Organizational Plaintiffs' claims about their members receiving fewer voters because of the primacy effect is a group political interest and is insufficient to prove they have standing. Further, Organizational Plaintiffs failed to present any evidence about resource diversion and so this Court correctly found that they lack standing under that theory at the summary-judgment phase. Because none of the Plaintiffs have Article III standing, the Fourth Circuit is likely to find this Court lacked jurisdiction over the case.

13

B.      The Ballot Order Statute Is Constitutional.

After abandoning their reliance on the Northern District of Florida's decision in *Jacobson*, Plaintiffs pivoted and relied on *Pavek v. Simon*, 2020 WL 3183249 (D. Minn. June 15, 2020). Now, however, they have fled from that decision because the Eighth Circuit reversed and held that "[i]t is unlikely" Minnesota's ballot order statute is unconstitutional. *Pavek v. Donald J. Trump for President, Inc.*, 2020 WL 4381845, *3 (8th Cir. July 31, 2020) (*per curiam*).   Again, this decision is well-supported by relevant precedent.

States may enact "comprehensive and sometimes complex election codes" notwithstanding the fact that "[e]ach provision of these schemes . . . inevitably affects—at least to some degree— the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).   "[T]he Supreme Court has consistently recognized this enduring tenet of our constitutional order, noting that the states possess a 'broad power to prescribe the Times, Places and Manner of holding Elections for Senators and Representatives, which power is matched by state control over the election process for state offices.'" *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 715 (4th Cir. 2016) (quoting *Clingman v. Beaver*, 544 U.S. 581 (2005)).

Where a state law burdens the right to vote, courts apply the *Anderson-Burdick* test.  *See Libertarian Party of Va.*, 826 F.3d at 713 (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson*, 460 U.S. at 789).  The test applies whether the restriction involves "voter qualifications, candidate selection, or the voting process." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 204 (2008) (Scalia, J., concurring).

The Fourth Circuit has unambiguously found that that "mere ballot order denies neither the right to vote, nor the right to appear on the ballot, nor the right to form or associate in a political organization." *Libertarian Party of Va.*, 826 F.3d at 717.  This is because state election statutes

14

burden the right to vote where candidates are restricted from the ballot.  *See, e.g.*, *Burdick*, 504 U.S. at 428; *Anderson*, 460 U.S. at 782, 806.

This is true even when the alleged injury from the ballot order is vote dilution.  "No such dilution of the value of one's vote exists in the context of position bias because an irrational vote is just as much of a vote as a rational one," *New Alliance Party v. N.Y. State Bd. of Elections*, 861 F. Supp. 282, 297 (S.D.N.Y. 1994) (citation omitted), and, thus, positional bias does not infringe on "the right of suffrage" through "dilution of the weight of a citizen's vote."  *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see also Ulland v. Growe*, 262 N.W.2d 412, 416 (Minn. 1978) ("Positional bias is not of the same nature.  It does not create any 'phantom' votes or reduce the value of any individual vote, because the 'biased' votes themselves are cast by fully qualified voters.").

So, in evaluating a Virginia statute which governed candidates' political party designation on the ballot, the Eastern District of Virginia held that it "need not conduct an *Anderson-Burdick* review" because the statute did not restrict plaintiffs' freedom to associate.  *Marcellus v. Va. State Bd. of Elections*, 168 F. Supp. 3d 865, 875 (E.D. Va. 2016).  The court reasoned that the Virginia statute did not "concern[] . . . whether a party or candidate can appear on the ballot" and explained that "traditional ballot access challenges seek to eradicate actual restrictions on a candidate's (or a voter's) ability to engage with others as a means to advance political beliefs or ideas."  *Id.* at 875-76.

As the Ballot Order Statute "does not 'restrict access to the ballot,'" *Libertarian Party of Va.*, 826 F.3d at 718 (quotation omitted), it "is not a constitutional concern."  *Id.* at 719.  Plaintiffs, thus, failed to prove that the Ballot Order Statute burdens their First and Fourteenth Amendment rights.  Accordingly, the *Anderson-Burdick* test does not apply here.

Yet even if the Fourth Circuit applies the *Anderson-Burdick* test, it will likely uphold the Ballot Order Statute.  Under the *Anderson-Burdick* test, a court must "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and weigh that against the "precise interests put forward by the State as justifications for the burden imposed."  *Libertarian Party of Va.*, 826 F.3d at 716 (quotation omitted).

The test incorporates "a deferential 'important regulatory interests' standard for nonsevere, nondiscriminatory restrictions, reserving strict scrutiny for laws that severely restrict the right to vote."  *Crawford*, 553 U.S. at 204 (Scalia, J., concurring) (quoting *Burdick*, 504 U.S. at 433-34).  "[T]he class of laws facing this higher scrutiny is limited.  Subjecting too many laws to strict scrutiny would unnecessarily tie the hands of States seeking to assure that elections are operated equitably and efficiently."  *Libertarian Party of Va.*, 826 F.3d at 717 (quotation omitted).

"[A]ccess to a preferred position on the ballot so that one has an equal chance of attracting the windfall vote is not a constitutional concern."  *New Alliance Party*, 861 F. Supp. at 295.  This is because ballot access is not blocked, *Meyer v. Texas*, 2011 WL 1806524, *5 (S.D. Tex. May 11, 2011), and because "there is 'no constitutional right to a wholly rational election, based solely on a reasoned consideration of the issues and the candidates' positions, and free from other 'irrational' considerations."  *Schaefer v. Lamone*, 2006 WL 8456798, *5 (D. Md. Nov. 30, 2006), *aff'd*, 248 F. App'x 484 (4th Cir. 2007) (*per curiam*) (quoting *Clough v. Guzzi*, 416 F. Supp. 1057, 1067 (D. Mass. 1976)).

The primacy effect does not deny candidates and voters the right to associate because, "[b]y definition, windfall voters have disregarded association in making their choice.  If they have not, then they are not windfall voters."  *Sarvis v. Judd*, 80 F. Supp. 3d 692, 703 (E.D. Va. 2015), *aff'd*,

*Libertarian Party of Va.*, 826 F.3d 708.  And it further "does not 'restrict the ability of the [party] and its members to endorse, support, or vote for anyone they like.'"  *Id.*  (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997)).  So the alleged primacy effect injury is "most modest."  *Libertarian Party of Va.*, 826 F.3d at 717; *see Meyer*, 2011 WL 1806524 at *6.

The Ballot Order Statute therefore places, at best, a minimal burden on Plaintiffs' rights. *See Libertarian Party of Va.*, 826 F.3d at 718.  It is thus only subject to the most discretionary level of review.  *Id.*; *see also Crawford*, 553 U.S. at 204.  As such, the Ballot Order Statute need only be "supported by 'important regulatory interests.'"  *Libertarian Party of Va.*, 826 F.3d at 719 (quoting *Timmons*, 520 U.S. at 358).

"Election laws that impose only a 'modest' burden will be upheld if the state can 'articulate' its 'important regulatory interests.'"  *Buscemi*, 964 F.3d at 262 (quoting *Libertarian Party of Va.*, 826 F.3d at 716, 719); *see Sarvis*, 80 F. Supp. 3d at 703.  "A state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions."  *Id.* (quotation omitted).

Moreover, the State need only show that "its ballot design furthers those interests."  *Sarvis*, 80 F. Supp. 3d at 708.  "States are not required 'to make a particularized showing of the existence of voter confusion . . . prior to the imposition of reasonable restrictions.'"  *Pisano v. Strach*, 743 F.3d 927, 937 (4th Cir. 2014) (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-95 (1986)); *see also Sarvis*, 80 F. Supp. 3d at 708.  To require otherwise "runs contrary to the explicit holdings of the Supreme Court and the Fourth Circuit."  *Sarvis*, 80 F. Supp. 3d at 706.

Courts have routinely upheld election statutes where States have advanced the same interests as the Secretary advanced here.  *See Schaefer*, 2006 WL 8456798 at *4 ("[T]he State has an interest in developing and ordering a manageable ballot to prevent voter confusion." (quotation

omitted)); *see also Libertarian Party of Va.*, 826 F.3d at 721; *Green Party of Tenn. v. Hargett*, 2016 WL 4379150,*29-31 (M.D. Tenn. Aug. 17, 2016), *aff'd*, 2017 WL 4011854 (6th Cir. May 11, 2017) (*per curiam*).

> Thus,

> to the extent that the plaintiffs' experience any injury to their constitutional rights from their inability to be listed first on the ballot, that minor injury is outweighed by the [S]tate's regulatory interests in organizing a clear and intelligible ballot, presenting a logical arrangement based on the reasonable and nondiscriminatory basis of historical strength of support, and displaying candidates in a simple way that avoids voter confusion.

*Sarvis*, 80 F. Supp. 3d at 708 (quotation omitted) (cleaned up); *see also Schaefer*, 2006 WL 8456798 at *4 ("Even assuming that the burden on candidates and voters rises to the level of a constitutional harm, the State's interests outweigh that burden."); *Democratic-Republican Org. of N.J. v. Guadagno*, 900 F. Supp. 2d 447, 459-60 (D.N.J. 2012) ("Because the Plaintiffs' burden, if any, is negligible, any reasonable regulatory interest provided by the State will ensure the statutes' constitutionality under *Anderson*.").

And, although "randomized or rotational ballots may address the phenomenon of which the [Plaintiffs'] complain," because the State "has articulated a sufficiently weighty reason for its ballot design and employed reasonable regulations in its service, then the [State] has acted within constitutional bounds and this Court may not stand in judgment of that discretion properly exercised by the legislative body." *Sarvis*, 80 F. Supp. 3d at 708-09. The Ballot Order Statute is therefore constitutional under the *Anderson-Burdick* test.

The Ballot Order Statute survives Plaintiffs' equal-protection challenge for the same reasons it survives constitutional scrutiny under the *Anderson-Burdick* test. *See Libertarian Party of Colo. v. Buckley*, 938 F. Supp. 687, 693 (D. Colo. 1996) ("Assuming, for the sake of argument, that [Colorado's ballot order statute] is amenable to an equal protection analysis" the court

18

"continue[s] with the *Anderson* directive to weigh the 'character and magnitude' of this infringement against the legitimacy and strength of the State's proffered justifications for it." (quotation omitted)); *Graves v. McElderry*, 946 F. Supp. 1569, 1578 (W.D. Okla. 1996) (applying *Anderson-Burdick* analysis to equal protection claim); *cf. Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001) ("Almost every statute subject to the very deferential rational basis standard is found to be constitutional.").

The Equal Protection Clause "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992) (citation omitted). So ballot order statutes violate the Equal Protection Clause only when they are biased. In *Graves*, a Democratic Party-controlled Oklahoma legislature enacted a ballot order statute which mandated that Democratic Party candidates always appear first on the ballot. 946 F. Supp. at 1579. The Western District of Oklahoma found the statute violated the Equal Protection Clause. *Id.* at 1581-82. The Seventh Circuit found that Illinois's county clerks' practice of placing their party at the top of the ballot intentionally discriminatory and violative of equal protection. *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977). And a three-judge district court found unconstitutional an Illinois statute allowing the Secretary of State to break filing race ties through personal preference. *Mann v. Powell*, 314 F. Supp. 677, 678-79 (N.D. Ill. 1969) (*per curiam*), *aff'd*, 398 U.S. 955 (1970) (*per curiam*). The Ballot Order Statute is not discriminatory like those.

Here, the Ballot Order Statute does not "distinguish[] between the parties . . . in contravention of the Equal Protection Clause." *New Alliance Party*, 861 F. Supp. at 293. It "merely allocates this [alleged] benefit of positional bias, which places a lesser burden on the right to vote, . . . in a neutral, nondiscriminatory manner." *Libertarian Party of Va.*, 826 F.3d at 718

19

(quotation omitted).  Thus, the Ballot Order Statute gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot.

Even if the Ballot Order Statute is discriminatory, it is nevertheless constitutional as any disparate treatment is outweighed by the State's valid, regulatory interests.  Because Plaintiffs have not proven "a classification . . . involving fundamental rights" or a suspect class, the Ballot Order Statute "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Heller v. Doe*, 509 U.S. 312, 319 (1993); *see also Schaefer*, 2006 WL 8456798 at *2 (defining a suspect class as involving race, religion, national origin, ancestry, alienage, gender, or illegitimacy).

In short, the Fourth Circuit is likely to reverse this Court's injunction.  It may do so on standing grounds or it may do so on the merits.  Either way, this factors weighs in favor of staying the injunction pending appeal.

## CONCLUSION

This Court should stay its final judgment pending appeal.

DATED: August 10, 2020                     Respectfully submitted,

                                           MAC WARNER, SECRETARY OF STATE
                                           OF THE STATE OF WEST VIRGINIA

                                           By Counsel,

                                           PATRICK MORRISEY
                                             ATTORNEY GENERAL


                                           /s/ Jessica A. Lee
                                           Curtis R. A. Capehart (WV Bar # 9876)
                                             *Deputy Attorney General*
                                           John M. Masslon II (WV Bar #13650)
                                           Jessica A. Lee (WV Bar #13751)
                                             *Assistant Solicitors General*
                                           1900 Kanawha Blvd. East

Building 1, Room E-26
Charleston, WV 25305
Email: Curtis.R.A.Capehart@wvago.gov
        John.M.Masslon@wvago.gov
        Jessica.A.Lee@wvago.gov
Telephone: (304) 558-2021
Facsimile: (304) 558-0140